## SMITH v. NEW YORKER STAATS ZEITUNG.

(Supreme Court, Appellate Division, First Department. ░January 3, 1913.)

1. LIBEL AND SLANDER (§§ 7, 49\*)—WORDS LIBELOUS PER SE—COMPLAINT.

Defendant published a newspaper article entitled "Caught," and reciting that post office inspectors had made a good find in that they had discovered gold brick dealings which were the worst since the "Burr Case"; that they arrested plaintiff and another, the two probable heads of a tanning company. The article further charged that this company was incorporated with a $1,500,000 capital; that it was without property, and that the stock was being fraudulently sold for the benefit of plaintiff and his associates. Plaintiff, after setting out the article, alleged that it was wholly false as to him, except that he was arrested; that he was admitted to bail and the charge afterwards dismissed, without a hearing; that the articles were published recklessly, willfully, wantonly, maliciously, and without any effort to ascertain the truth or falsity of the charges. *Held*, that the article was libelous per se, and that the complaint was not demurrable on the ground that the article was privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78, 148; Dec. Dig. §§ 7, 49.\*]

2. LIBEL AND SLANDER (§ 42\*)—REPORT OF JUDICIAL PROCEEDINGS—STATUTES.

Code Civ. Proc. § 1907, provides that no action can be maintained against the publisher of a newspaper for the publication of a fair and true report of a judicial proceeding, without proving actual malice; and section 1908 declares that the prior section shall not apply to a libel contained in the heading of the report, or in any other matter added by any person concerned in the publication, or in the report of anything said or done, at the time and place of proceedings, which was not a part thereof. *Held*, that the qualified privilege therein created was limited to a fair and true report of the judicial proceedings, and did not extend to other matters added thereto.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 42.\*]

Appeal from Special Term, New York County.

Action for libel by George Herbert Smith against the New Yorker Staats Zeitung. From an order (77 Misc. Rep. 601, 138 N. Y. Supp. 557) sustaining a demurrer to the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Putney, Twombly & Putney, of New York City (Edmonds Putney, of New York City, of counsel), for appellant.

Amend & Amend, of New York City (John E. Donnelly, of New York City, of counsel, and Alfred J. Amend, of New York City, on the brief), for respondent.

CLARKE, J. [1] The complaint sets up that the defendant published in an edition of said newspaper dated July 29, 1911, an article concerning this plaintiff, which, translated into English, is as follows:

"Caught. Post Office Inspectors Bring Suit Against Four of the Head Members of the American Tanning Co.

"Post Office Inspectors Kincaid and Booth made a good find yesterday in that they discovered 'gold brick' dealings which show to be the worst since

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Burr Case. According to their suspicions that underhand dealings were going on, inspectors arrested in the Annex of the Produce Exchange * * * also F. C. Canfield and G. Herbert Smith, the two probable heads of the American Tanning Company. The four prisoners were brought before the district judge with the charge that they had used the mail for fraudulent purposes in connection with selling certain coal and tanning shares, and the judge placed * * * and Smith each under $2,500, and stated that the trial would take place October 2nd. The Post Office inspectors bring the heaviest charge against Robinson or Raymond for, according to their statements, he was the secretary and the leading spirit in Henry N. Roach & Co., a brokerage firm which sold stocks for different companies, most of which failed, and the stocks were then placed in newer companies of doubtful character. One of the latest companies which Henry N. Roach used in this way is the American Tanning Co., against which the charge has been made. It was organized in May or June, 1909, and incorporated with a capital of $1,500,000, consisting of 150,000 shares quoted at $10 a share. They advertised extensively as having their own tannery in Newark, N. J., equipped with the newest and fastest known process. Both inspectors claim that the plant in Newark, N. J., is leased by the month and that the company has not dressed a single hide for business purposes. According to the charge, the company kept the people 'in the dark,' especially those with smaller interests, until it went into the hands of the receivers, as with all previous companies with whom H. N. Roach & Co. had dealings. Over 42,000 shares were sold at $10 a piece and Roach & Co. was to get half of the profits for material and notices; the shareholders, however, received nothing. The inspectors estimate the earnings of the organizers at $439,000. Among the thousands of sufferers was one woman confined to her bed whose husband was an invalid and the son in the last stages of consumption. In spite of this, she was persuaded to take a mortgage on her house for $1,000 and to invest it in shares of the American Tanning Co."

"IV. That said article is wholly false as to this plaintiff, except that this plaintiff was arrested on the 28th day of July, 1911, and was admitted to bail in the sum of $2,500 pending a hearing before United States Commissioner Shields. That the complaint upon which plaintiff was arrested was thereafter dismissed by said Commissioner Shields upon motion of the United States District Attorney for the Southern District of New York without any hearing ever having been had thereon, the plaintiff discharged, and all proceedings against the plaintiff terminated. That said article was published recklessly, willfully, wantonly and maliciously, and without any effort to ascertain the truth or falsity of the charges therein made."

Defendant demurred upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The learned Special Term said, in its opinion:

"From the admissions by plaintiff in his complaint the article was a report of a judicial proceeding, and it appeared to be substantially correct. It was therefore privileged"

—and sustained the demurrer.

That conclusion is not warranted by the record. It would seem that there is a great deal stated in the article which is not the report of a judicial proceeding. It may be that everything there stated occurred in the course of the judicial proceeding referred to, but it is not apparent upon the face of the complaint. On the contrary, the charge is that the article was wholly false, except that the plaintiff was arrested and admitted to bail. The complaint affirmatively states that the commissioner, on the District Attorney's own motion, and without a hearing, dismissed the charge, discharged the plaintiff, and terminated the proceeding.

[2] The Code of Civil Procedure provides as follows:

"§ 1907. An action, civil or criminal, cannot be maintained against a reporter, editor, publisher, or proprietor of a newspaper, for the publication therein of a fair and true report of any judicial, legislative, or other public and official proceedings, without proving actual malice in making the report.

§ 1908. The last section does not apply to a libel, contained in the heading of the report; or in any other matter, added by any person concerned in the publication; or in the report of anything said or done, at the time and place of the public and official proceedings, which was not a part thereof."

The qualified privilege therein provided for is limited to a fair and true report of the judicial proceeding, and does not extend to other matters added thereto.

"The articles being libelous per se, privilege is a defense to be pleaded and proved, and upon the defendant rested the burden of showing that the publication was privileged." Stuart v. Press Pub. Co., 83 App. Div. 467, 82 N. Y. Supp. 401.

It follows, therefore, that the defendant must be put to its answer.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, with leave to the defendant to withdraw the demurrer and interpose an answer, upon payment of said costs and within 20 days after the service of the order to be entered hereon. All concur.